IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DEBORAH K. JOURDAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 04-459-CJP |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with **42 U.S.C. § 405(g)**, plaintiff Deborah K. Jourdan seeks judicial review of the March 4, 2004, final agency decision denying her disability insurance benefits (DIB) and supplemental security income (SSI).[1]

### Procedural History

Ms. Jourdan filed an application for DIB and SSI on May 20, 2002, alleging disability beginning on April 12, 2002. (Tr. 102).

The application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before Administrative Law Judge (ALJ) Eve M. Riley on January 13, 2004. (Tr. 36-60). ALJ Riley denied the application in a decision dated March 4, 2004. (Tr. 13-22).

The Appeals Council denied plaintiff's request for review on May 28, 2004, and the decision of the ALJ became the final agency decision. (Tr. 7-9). Plaintiff has exhausted her

---

[1]Upon consent of the parties, this case was assigned to the undersigned for final disposition on September 8, 2005, pursuant to 28 U.S.C. §636(c). See, Doc. 16.

administrative remedies and has filed a timely Complaint in this Court.

## Issues Raised by Plaintiff

Plaintiff does not assert that the ALJ's decision was not supported by substantial evidence, or that the ALJ erred in any respect. Her only point is that the Appeals Council erred in failing to remand her case to the ALJ for further consideration. See, Doc. 8, pp. 1-2. After the ALJ rendered her decision, plaintiff submitted additional records to the Appeals Council. (Tr. 10-11). These records are a Medical Source Statement completed by her doctor, Dr. Beaty, and notes of an office visit. These records are dated April, 2004. (Tr. 641-645).

## The Evidentiary Record

The Court has reviewed and considered the entire record in formulating this Memorandum and Order. Because of the limited scope of plaintiff's argument, the Court will not engage in a detailed recitation of the record, but will summarize only enough to allow an understanding of the Court's decision.

**1.      Hearing - January 13, 2004**

Deborah K. Jourdan, who was represent by counsel, was 48 years old at the time of the hearing. (Tr. 40). She has a GED and no vocational training. (Tr. 43). She has mostly worked in the restaurant industry. Her last employment was as a cook in a bowling alley in 2002. (Tr. 43). She has worked as a cashier at McDonald's and at Hardee's. (Tr. 45). She also worked as a home health aid. (Tr. 46).

She testified that she stopped working on the advice of Dr. Kadri. (Tr. 47-48). She is no longer treated by that doctor. Her regular doctor is Dr. Beaty, who treats her COPD and hypertension. (Tr. 47-49). A Dr. Wallace performed cardiac catheterization due to palpations,

but it was normal. (Tr. 49). Neither of those doctors has placed restrictions on her.

Her complaints are chest pains, heart palpations, high blood pressure, sweats, and nausea. (Tr. 50).

She was 5'5" or 5'6" and weighed 201 pounds. She had gained about 60 or 70 pounds due to taking prednisone. She was no longer taking prednisone at the time of the hearing. (Tr. 40-41).

She tries to do housework and take care of her teenaged children. After 15 or 20 minutes of work, she has to rest for half an hour to an hour because she gets short of breath. (Tr. 52-53). She has daily chest pains, for which she sometimes uses nitroglycerin. (Tr. 54). She uses a nebulizer once or twice a month when she can not breathe. (Tr. 55). She is sensitive to temperature changes and smoke. (Tr. 56).

A vocational expert testified that most of plaintiff's past work was unskilled and light. (Tr. 58). Asked to assume a person with a RFC of sedentary work, limitations on climbing, and environmental limitations of avoiding fumes, odors, dust, gasses and poor ventilation, she testified that the person could do the jobs of sedentary assembly (2000 positions), reception and information clerk (less than 2000 positions) and sedentary cashier (150 positions). If the person needed a rest break after working for 15 minutes, there would be no jobs that she could do. (Tr. 58-59).

**2.    Medical Records**

Ms. Jourdan was hospitalized at St. Joseph's Hospital in Breese, Illinois, from April 19, 2002, to April 24, 2002. She gave a history of shortness of breath and palpitations for the previous month. Dr. Kadri, who had treated her previously for asthma, participated in her care.

Dr. Kadri noted that bilateral pulmonary emboli were confirmed by tests, but the presentation was "atypical." (Tr. 345). He also noted that her asthma was stable. (Tr. 345).

She was treated with Heparin and Coumadin. An echocardiogram on April 22, 2002, was normal. (Tr. 360). The discharge summary states that she was "completely asymptomatic since the day of admission." (Tr. 376-377).

She was treated by Dr. Beaty thereafter. He summarized her treatment and condition in a report dated August 14, 2002. (Tr. 389). The report is addressed to "TO WHOM IT MAY CONCERN." He noted that a lung scan done on June 28, 2002, showed improved perfusion. She had asthma from childhood and took Serevent, Flovent, and used an inhaler as needed. Dr. Beaty stated that plaintiff's primary problems are a positive Lupus anticoagulant and a recent pulmonary emboli which caused her shortness of breath on exertion, intermittent pleuritic chest pain, and leg cramping. Ambulation was "at times difficult as well as activity such as lifting, bending or stooping."

In December, 2002, CT examination of her lungs showed no evidence of pulmonary embolism. (Tr. 583).

Plaintiff was evaluated by David Wallace, M.D., for chest pain. He noted on December 4, 2002, that she has not been definitely tested for Lupus, and that "Lupus-like anticoagulant does not mean that she has Lupus." (Tr. 589). She had a normal stress test on December 11, 2002. (Tr. 590). On May 27, 2003, cardiac catheterization showed no significant coronary disease. (Tr. 595). On October 9, 2003, Dr. Wallace reported that she had been extensively evaluated, with "all normal cardiac findings." (Tr. 613). On November 17, 2003, Dr. Wallace reviewed plaintiff's records from Salem Township Hospital. He stated that she had been in the

emergency room "multiple times for a variety of complaints" over the past four years. He noted that "All of her chest x-rays, EKGs and cardiac enzymes were normal." (Tr. 619).

On December 7, 2003, plaintiff went to the emergency room at St. Joseph's Hospital in Breese, Illinois. She was concerned because her blood pressure was high. She had been seen in the emergency room the previous night for a headache and "racing heart" but no longer had those symptoms. In the emergency room her blood pressure readings were 130/84 and 106/78. She was discharged. (Tr. 472).

She again went to the emergency room at St. Joseph's on December 15, 2003, at 11:25 a.m. She complained of nausea and diarrhea since 2:00 a.m., and burning in her stomach. He blood pressure was up. She was given fluids and told to follow a clear liquid diet for 24 hours. She was discharged to home with a diagnosis of viral syndrome. (Tr. 562-563).

Ms. Jourdan returned to the emergency room at 8:30 p.m. on December 15, 2003, complaining of left chest pain, elevated blood pressure, and burning in her upper abdomen and chest. She was admitted to the hospital. (Tr. 558-561). Dr. Atul Shah was consulted regarding her chest pain. He noted that she was in no apparent distress and that her blood pressure was 120/70. He stated that he "doubt[ed] that any of her symptoms are related to any cardiovascular problems." (Tr. 564, 623-624). He did not recommend any further cardiac work up. (Tr. 565). Dr. Henry Mattis was also consulted. He concluded that she had atypical chest pain with a history of mitral valve prolapse. He recommended that she add a low dose Beta blocker to her blood pressure medication, and stated that no further cardiac testing was needed. (Tr. 624-625).

On January 15, 2004, Dr. Wallace saw plaintiff again for reevaluation of her hypertension. He stated that her blood pressure was "doing quite well" and he did not believe

that she ever had a diastolic of 140. He stated that her recent CT shoed no pulmonary emboli, and that her cardiac tests had all been normal. He did not think her pain was cardiac, and stated that she did not need any more studies and did not need to be followed by a cardiologist. (Tr. 626-627).

**3.    Residual functional capacity assessment**

State agency physicians did a residual functional capacity assessment on June 12, 2002. (Tr. 381-388). They concluded that Ms. Jourdan was able to occasionally lift 50 pounds and frequently lift 25 pounds, stand and/or walk 6 out of 8 hours, sit less than 6 hours, and her ability to push/pull was unlimited. She had no postural or manipulative limitations, but should avoid concentrated exposure to fumes, odor, dusts, gases and poor ventilation.

**4.    Previous application**

Ms. Jourdan filed a previous application for Social Security benefits, in which she alleged disability beginning on October 15, 1998. (Tr. 99-101). She alleged that she was disabled due to uncontrollable high blood pressure and COPD. (Tr. 110). That application was denied, and she apparently did not file an appeal.

**Applicable Standards**

To qualify for disability insurance benefits, a claimant must be "disabled," which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** *Schroeter v. Sullivan***, 977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala***, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and he is not capable of performing his past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that the claimant is capable of performing.  **See,** *Bowen v. Yuckert***, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater***, 55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court.  **42 U.S.C. § 405(g)** states that "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Thus, the Court must determine not whether plaintiff is, in fact, disabled during the alleged period, but whether the ALJ's findings were supported by substantial evidence, and, of course, whether any errors of law were made. **See,** *Books v. Chater***, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater***, 55 F.3d 300, 306 (7th Cir.1995)).**  In reviewing the ALJ's decision denying benefits, the Court's focus is

on whether the ALJ's decision is supported by substantial evidence in the record, and not on whether a different decision could have been reached. **Henderson v. Apfel, 179 F.3d 507, 512 (7th Cir. 1999).**

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).** In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997); Kepple v. Massanari, 268 F.3d 513, 516 (7th Cir. 2001)**.

## Analysis

ALJ Riley properly followed the framework of the five step analysis described above. She found that plaintiff has medically diagnosed impairments of hypertension, asthma, status post pulmonary emboli, lupus-type syndrome, and atypical chest pain. She found that plaintiff's impairments did not meet or exceed a listed impairment, and that her testimony regarding her restrictions was not fully credible. Lastly, she found that plaintiff has the residual functional capacity to perform the requirements of sedentary work with environmental limitations, and that there are significant numbers of such jobs. (Tr. 15-22).

Plaintiff's brief asserts that evidence demonstrating disability did not become available until after the hearing, and the Appeals Council "erred in failing to remand" her claim to the ALJ for further consideration. (Doc. 8, p. 1). Pursuant to **42 U.S.C. § 405(g)**, a claimant may obtain review in this Court of a "final decision of the Commissioner of Social Security." When the

Appeals Council denies a request for review, as happened here, the decision of the ALJ becomes the final decision of the Commissioner. It is the decision of the ALJ which is reviewed by this Court. **20 C.F.R. §404.981;** ***Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 816 (7th Cir. 1993).**

The Court may consider the issue of whether an Appeals Council order refusing to consider additional evidence review was the result of a mistake of law. ***Eads*, 983 F.2d at 817.** An example of a such a mistake of law is a determination by the Appeals Council that additional evidence submitted to it does not constitute new and material evidence. **See,** ***Nelson v. Bowen*, 855 F.2d 503, 506-08 (7th Cir.1988);** ***Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).** Here, though, the Appeals Council did not refuse to consider the additional evidence. The Appeals Council considered the April, 2004, materials from Dr. Beaty but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 7). The decision of the Appeals Council denying review, as opposed to an order refusing to consider additional evidence, is within the discretion of the Appeals Council. It is not the final decision of the Commissioner, and is not subject not subject to review by this Court. **42 U.S.C. § 405(g)**; ***Perkins*, 107 F.3d at 1294**

This Court reviews the decision of the ALJ to determine if it was supported by substantial evidence, and whether any errors of law were made. ***Books v. Chater*, 91 F.3d 977-978.** Plaintiff does not argue that the decision was not supported by substantial evidence. Her only argument is that, had the 2004 material from Dr. Beaty been available to the ALJ, the ALJ would have been "obliged" to find that plaintiff was disabled. **Doc. 8, p. 2**. In effect, plaintiff is asking this Court to weigh the additional evidence and determine whether that evidence would

mandate a finding that she does not have the RFC to perform sedentary work.  This Court cannot undertake such a review.  Where the Appeals Court denies review of an ALJ's decision, additional material submitted to the Appeals Court that was not before the ALJ cannot be considered by this Court in reviewing the ALJ's decision.  **Luna v. Shalala**, 22 F.3d 687, 689 (7th Cir. 1994); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

      Despite the fact that plaintiff has not identified any errors in the ALJ's decision, the Court has reviewed same and finds that there are no errors of law and that the decision is supported by substantial evidence.  The ALJ followed the five-step analysis.  Her findings as to plaintiff's RFC were supported by the medical records, including the state agency physicians' review.  Her finding that there are a significant number of jobs that plaintiff could perform was supported by the testimony of the vocational expert.  Thus, there is no basis for reversal of the decision denying plaintiff benefits.

      The Court has also considered whether remand of this case is appropriate.  There are two kinds of remand in a social security case.  A "sentence four" remand depends on a finding of error in the Commissioner's final decision.  A "sentence six" remand is for the purpose of considering new evidence.  42 U.S.C. § 405(g); ***Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan***, 195 F.3d 975, 978 (7th Cir. 1999).  Because there is no error in the Commissioner's decision here, a sentence four remand is not possible.

      The Court may order a remand pursuant to sentence six for the consideration of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." **42 U.S.C. § 405(g)**.

Here, the April, 2004, material from Dr. Beaty simply summarizes the medical records from earlier treatment. The ALJ denied Ms. Jourdan's application on March 4, 2004. Plaintiff went to see Dr. Beaty on April 14, 2004. The record states that she "comes in today with disability papers. She had some papers from her lawyer that she wants filled out." (Tr. 644). There is no indication that plaintiff sought treatment from Dr. Beaty on April 14, 2004, or that Dr. Beaty did any physical examination or testing on April 14, 2004. The April 14, 2004, note does does not set forth any new findings. Rather, Dr. Beaty completed a statement of ability to do work-related activities form in which he indicated that plaintiff had certain limitations which commenced back on April 19, 2002. (Tr. 643). This is not new evidence. New evidence for purposes of 42 U.S.C. § 405(g) is evidence that was "not in existence or available to the claimant at the time of the administrative proceeding " ***Sample v. Shalala,* 999 F.2d 1138, 1144 (7th Cir.1993) (quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658 (1990)).**

Dr. Beaty's 2004 report is very similar to the report at issue in ***Jens v. Barnhart* 347 F.3d 209 (7th Cir. 2003)**. There, the Seventh Circuit stated "Although the report had not yet been written at the time of the ALJ's decision, the information summarized in the report had long been in existence. *Jens*, 347 F.3d at 214.** Dr. Beaty's report merely summarizes his previous treatment and observations, which had "long been in existence."

Plaintiff has made no showing that there was good cause for her failure to present a statement of ability to do work-related activities by Dr. Beaty before the ALJ's decision was issued. At the hearing on January 13, 2004, plaintiff's attorney asked for and was granted 30 additional days in which to submit evidence. (Tr. 39). There is no suggestion at all as to why plaintiff could not have obtained the statement from Dr. Beaty before the record was closed.

## Conclusion

After careful review of the record as a whole, the Court finds that the ALJ committed no errors of law, and that the findings of the ALJ are supported by substantial evidence.  Further, plaintiff is not entitled to a sentence six remand because the 2004 report of Dr. Beaty is not "new" evidence and plaintiff has not demonstrated good cause for her failure to submit the information contained therein before the ALJ's decision.

For the foregoing reasons, the final decision of the Commissioner of Social Security denying plaintiff Deborah K. Jourdan disability insurance benefits (DIB) and supplemental security income (SSI) is **AFFIRMED.**

**The Clerk of Court is directed to enter judgment in favor of defendant.**

**IT IS SO ORDERED.**

**DATE:  September 14, 2005**.

                      **s/ Clifford J. Proud**
                      **CLIFFORD J. PROUD**
                      **UNITED STATES MAGISTRATE JUDGE**